[Cite as *State v. Knight*, 2016-Ohio-8134.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | Nos.   16AP-288<br>(C.P.C. No. 13CR-5183) |
| v. | : | and    16AP-290<br>(C.P.C. No. 13CR-6612) |
| Kenneth A. Knight II, | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on December 13, 2016

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Laura M. Swisher,* for appellee.

**On brief:** *Blaise G. Baker,* for appellant.

APPEALS from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1}  Defendant-appellant, Kenneth A. Knight II, appeals from judgments of conviction and sentences entered by the Franklin County Court of Common Pleas. Because his convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, we affirm those judgments.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2}  On September 30, 2013, appellant was indicted under case No. 13CR-5183 on one count of breaking and entering, in violation of R.C. 2911.13, and one count of possession of criminal tools, in violation of R.C. 2923.24. On December 18, 2013, appellant was also indicted under case No. 13CR-6612 on one count of vandalism, in violation of R.C. 2909.05.  All of the charges arise from a single incident.

{¶ 3}   The case was tried before a jury on February 16 and 17, 2016. Columbus Police Department ("CPD") Officers Watkins, Melvin, and Penhorwood, CPD Detective Covey, and Attorney Patrick Mangan testified for the state. Based on the trial transcript, the following testimony was presented to the jury.

{¶ 4}   In the early morning hours of August 16, 2013, two CPD officers were on bike patrol and noticed a vehicle parked at the rear of a building located at 4625 Maize Road in Columbus, Ohio, that was not open for business, but had previously been Tony's Bar ("the building"). Tony's Bar had been closed for several months. As the officers approached the parking lot, the van began to move toward them. The officers signaled to the driver to stop and he complied.

{¶ 5}   Appellant was identified as the driver and the officers noted he was wearing dark clothing and his attire was unusual for August, in that he was wearing a winter hat and gloves along with a jacket or sweatshirt. The officers also noted that appellant was extremely sweaty and had dirt and debris on his clothing, particularly on his chest and shoulders. Appellant informed one of the officers that he was looking for scrap metal in dumpsters.

{¶ 6}   The other officer went to the area of the building where the van had been and noticed that the back door to the vacant building had been forced open and that items had been taken from the building. The officer noted that ceiling tiles had been removed, copper pipes were cut, and that the inside of the building was very dirty and covered in dust and debris. Upon further inspection, one of the officers noticed that a toilet handle was missing in a bathroom.

{¶ 7}   The officers asked appellant if they could get in his van and he refused. However, the officers looked through the window of the van and saw copper pipe, copper bars, and bags of tools, including a hacksaw.

{¶ 8}   Detective Covey, who has been a burglary detective for over 20 years, was called to investigate this incident. He testified that he inspected the building and found that missing from the building were pipes from the ceiling, a toilet handle from one bathroom, and bars from the electrical panel. He noted that the pipes in the ceiling had been cut at an angle which he described as unusual. When he looked at the pipes in appellant's van, they were also cut at that unusual angle.

{¶ 9}   The detective noted a shoeprint in the dust inside the building on the floor of the mechanical room where the electrical panel was located. Covey testified that the footprint was distinct and claimed that, upon visual inspection, the footprint matched appellant's shoe print. Covey further claimed that he visually inspected the shoes of every officer present at the scene and that none of the officers' shoes matched the footprint in the building.

{¶ 10} Covey testified that, "[o]nce I determined that these pipes came from inside the building and that his shoe print was inside the mechanical room, we went ahead and opened the van and examined the material that was in the van.  Inside the van underneath the pipes were electrical bars that were broken off from the mechanical room." (Feb. 17, 2016 Tr. Vol. 2 at 147.) Covey testified that along with the pipes and electrical bars, police recovered a hacksaw, which is frequently used for cutting copper pipes, knee pads, gloves, and a mask. Covey also testified that the hacksaw had copper shavings on it.

{¶ 11} One of the officers testified that the van was searched and a toilet handle, copper pipe, and copper busbars were found in appellant's van which, according to the officer, matched what was missing from inside the building.

{¶ 12} Detective Covey further testified that the pipes in the building and the pipes in appellant's van were cut at the same angle. He examined the pipes found in the van and the places where pipes had been removed and determined that they were from the mechanical room in the building.  Covey testified that, "[i]t was obvious the pipes that were cut at angles were the same ones that were up there," i.e., were previously in the building. (Tr. Vol. 2 at 170.) In addition, Covey testified that he visually inspected electrical bars found in appellant's van and concluded that the bars came from the building.

{¶ 13} Appellant was transported to CPD headquarters where he was questioned by Covey.  Covey testified that appellant had dry wall powder and insulation particles on his clothing. Appellant informed him that the copper pipes in his van were obtained from other locations where he had been searching dumpsters.   However, appellant refused to state the locations where he claimed to have obtained the copper pipes. Covey testified that "[h]e stated that he got the pipes from other locations but wouldn't give me any specific where he got them from." (Tr. Vol. 2 at 149.) Covey noted that appellant offered

no explanation as to why he was on the property in question, and that there were no dumpsters on the property. (Tr. Vol. 2 at 204.)

{¶ 14} Attorney Patrick Mangan was appointed executor of the estate of Tony Hsiao in 2010. He testified that Hsiao was the former owner of Tony's Bar and that he passed away in October 2009. Mangan assumed all ownership responsibilities previously belonging to Hsiao. After Hsiao's death, his partner in the bar continued to run it initially. Eventually, around October 2012, Hsiao's family decided to sell the building. Mangan then worked with a real estate agent to market the property for sale.

{¶ 15} Mangan testified that he did not give anyone, including appellant, permission to remove pipes. He testified that the missing pipes and other items hurt the value of the property because the pipes would need to be replaced and the building could not open as a restaurant with the missing plumbing and electrical bars. According to Mangan, the vandalized pipes and plumbing at the building negatively affected the value of the property. Mangan testified that the property could not be sold in its vandalized condition.

{¶ 16} At trial, counsel for appellant made a Crim.R. 29 motion for acquittal as to all of the charged counts which the trial court overruled. A jury found appellant guilty of all counts, breaking and entering, possession of criminal tools, and vandalism. The trial court sentenced appellant to three years of community control on each of the counts.

## II.  ASSIGNMENTS OF ERROR

{¶ 17} Appellant appeals, assigning the following errors:

> [I.] Defendant-Appellant was deprived of his liberty without due process of law where his convictions for [breaking and entering], vandalism, and possession of criminal tools were against the manifest weight of the evidence.
>
> [II.] The trial court erred when it overruled Defendant-Appellant's Motion for Acquittal pursuant to Criminal Rule 29.

## III.  CONVICTIONS WERE NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 18} This court in *State v. Baatin,* 10th Dist. No. 11AP-286, 2011-Ohio-6294, ¶ 8-11, stated the applicable law:

Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11 * * *. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.* * * *.

The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, * * *.

When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*; *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge,* 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury * * * " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.* * * *. Accordingly, we afford great deference to the jury's determination of witness credibility.

## A. Breaking and Entering

{¶ 19} The statute for breaking and entering, found under R.C. 2911.13(A) states that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony." Pursuant to R.C. 2913.02(A)(1), theft is defined as

knowingly obtaining or exerting control over either the property or services without the consent of the owner or person authorized to give consent.

{¶ 20} Appellant argues that the circumstantial evidence used to convict appellant was too unreliable to sustain a conviction and did not point strongly to appellant as the perpetrator of any crime. Appellant alleges that the police officers did not search for any fingerprints at the scene, and did not definitively determine whether a footprint at the scene matched him. In addition, no witnesses identified appellant as having broken into the building and appellant was never seen carrying any items into or out of the building.

{¶ 21} "A conviction is not against the manifest weight of the evidence because the jury chose to believe the state's version of events over the defendant's version." *State v. Hawk,* 10th Dist. No. 12AP-895, 2013-Ohio-5794, ¶ 59. A lack of physical evidence does not warrant interfering with the jury's decision or preclude a conviction. *See State v. Hunter*, 10th Dist. No. 10AP-599, 2011-Ohio-1337, ¶ 24. The testimony of one witness, if believed by the jury, is enough to support a conviction. *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. In addition, "[c]ircumstantial evidence is competent, probative evidence and can be the sole basis of a conviction." *State v. Payton*, 8th Dist. No. 76967 (Dec. 14, 2000).

{¶ 22} We disagree with appellant's assertion that the circumstantial evidence was too unreliable to sustain a conviction. Detective Covey testified that he matched appellant's shoe to the shoeprint in the electrical room, thereby presenting evidence of appellant being in the building without permission, and checked the other officer's shoes to make sure they did not match the print. While the officers did not see appellant carry items out of the building, they and Covey did identify the items found in his van as matching the items that were missing from the building.

{¶ 23} The challenges to the circumstantial nature of the evidence were matters that were presented to the jury. The jury was in the best position to evaluate the witnesses credibility, and there is no persuasive reason for rejecting that determination. Like *Payton* at 8, "[a]lthough circumstantial, the evidence here pointed strongly, almost inescapably, toward" the appellant. After a thorough review, we find that the jury did not lose its way, nor create a manifest miscarriage of justice. We find that the evidence supports the jury's

verdict. Accordingly, appellant's conviction for breaking and entering is not against the manifest weight of the evidence.

### B. Possessing Criminal Tools

{¶ 24} The statute for possession of criminal tools, found in R.C. 2923.24(A) states "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 25} Appellant argues that no evidence was presented showing that appellant used any of the tools found in his van for a criminal purpose. In fact, he alleges that none of the tools found in his possession were specifically designed or adapted for a criminal purpose.

{¶ 26} We disagree. A jury can make reasonable inferences from the evidence. As the court stated in *State v. Sanders*, 6th Dist. No. L-96-379 (Feb. 13, 1998):

> It is permissible for a jury to draw inferences from the facts presented to them. *State v. Palmer* (1997), 80 Ohio St. 3d 543, 561, 687 N.E.2d 685, citing *Hurt v. Charles J. Rogers Transportation Co.* (1955), 164 Ohio St. 329, 130 N.E.2d 820. The weight given to an inference is a question for the trier of fact and will not be disturbed unless it is such that reasonable minds could not reach such a conclusion. *Id.* at paragraph four of the syllabus.

*Id.* at 7.

{¶ 27} Here, there was evidence that the pipes inside the building were cut and Detective Covey testified that a hacksaw could be used for that purpose. Covey also testified that the hacksaw had copper shavings on it. Appellant argues that the tools were consistent with his story that he was dumpster diving for scraps, but the jury heard that argument and rejected it. We find that the jury made a reasonable inference from the evidence and found appellant guilty of possessing criminal tools.

{¶ 28} After a thorough review, we find that the jury did not lose its way, nor create a manifest miscarriage of justice. We find that the evidence supports the jury's verdict. Accordingly, appellant's conviction for possessing criminal tools is not against the manifest weight of the evidence.

### C. Vandalism

{¶ 29} The statute for vandalism, found under R.C. 2909.05(B)(1)(b), provides:

No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:

* * *

Regardless of the value of the property or the amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation.

{¶ 30} Appellant argues that, at the time this incident occurred, Mangan was attempting to sell the building on behalf Hsiao's estate. He further alleges that no evidence was presented at trial showing that the damage caused to the vacant building delayed the sale of the building or prevented the building from being sold. Further, no evidence was presented that any damage to the property was necessary in order for Mangan to engage in his profession, business, trade, or occupation.

{¶ 31} The present case is analogous to *State v. Washington*, 8th Dist. No. 100994, 2014-Ohio-4578, ¶ 13, wherein the court stated:

In this case, the contractor's occupation is building a complete home. This is not a case where the contractor is merely providing services to an owner of the property. The owner is the builder, and thus, has an interest in the timely completion of the project. Although the damage did frustrate, but did not preclude, the ability to continue construction of the home, the property was necessary to the owner's ability to conduct its business of providing a completed product to the ultimate purchaser. In making the repairs, the construction of the final product was delayed. Washington caused damage, delaying the construction of the home by three weeks and, by implication, the property damaged, the home being sold, was necessary to the owner's profession. We overrule Washington's arguments to the contrary.

{¶ 32} Although Mangan testified that the bar was out of operation and that he did not have an office there, he also testified that the property was for sale and that the missing pipes and electrical equipment impeded the sale of the property. The pipes and electrical equipment that were removed from the building were necessary for the building to be marketed and sold as a restaurant. With the pipes missing, the property could not be sold as a restaurant and that was the business he was engaged in with the building as a

commodity. Much like the home builder in *Washington*, the damage impeded Mangan's ability to provide a product for sale. The damaged property was necessary to Mangan's ability to conduct his business of providing the property for sale.

{¶ 33} After a thorough review, we find that the jury did not lose its way, nor create a manifest miscarriage of justice. We find that the evidence supports the jury's verdict. Accordingly, appellant's conviction for vandalism is not against the manifest weight of the evidence.

{¶ 34} As such, appellant's first assignment of error is overruled.

## IV. TRIAL COURT DID NOT ERR IN OVERRULING CRIM.R. 29 MOTION

{¶ 35} Crim.R. 29 provides that the trial court must enter a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense." Crim.R. 29(A). As we have stated in *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12:

> A motion for judgment of acquittal, pursuant to Crim.R. 29, tests the sufficiency of the evidence. *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. Accordingly, an appellate court reviews a trial court's denial of a motion for acquittal using the same standard for reviewing a sufficiency of the evidence claim. *State v. Darrington*, 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15 (citing *State v. Barron*, 5th Dist. No. 05 CA 4, 2005-Ohio-6108, ¶ 38).

{¶ 36} As stated above, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Romine,* 10th Dist. No. 10AP-175, 2010-Ohio-5870, ¶ 17.

{¶ 37} Having found that appellant's convictions were supported by the manifest weight of the evidence, we necessarily find that the evidence was sufficient to sustain his convictions. *McCrary* at ¶ 17. As such, the trial court did not err when it overruled appellant's motion for acquittal pursuant to Crim.R. 29. Therefore, we overrule appellant's second assignment of error.

## V. DISPOSITION

{¶ 38}  Having overruled appellant's assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

————————————