[Cite as *State v. Troche*, 2023-Ohio-565.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 9-22-18

    v.

ROBERT W. TROCHE, JR.,              O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 2021 CR 027

Judgment Affirmed

Date of Decision: February 27, 2023

---

APPEARANCES:

    *Edwin M. Bibler* for Appellant

    *Jocelyn Stefancin* for Appellee

Case No. 9-22-18

**MILLER, P.J.**

{¶1} Defendant-appellant, Robert W. Troche, Jr., appeals the March 9, 2022 judgment of sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On January 13, 2021, the Marion County Grand Jury indicted Troche on two counts: Count One of possession of fentanyl in violation of R.C. 2925.11(A), (C)(11), a fifth-degree felony, and Count Two of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1), a fifth-degree felony. Troche appeared for arraignment on March 22, 2021 and pleaded not guilty to the counts in the indictment. The matter eventually proceeded to a jury trial commencing on February 15, 2022.

{¶3} At trial, Lieutenant Richard Wheeler, a third-shift supervisor and canine handler with the Marion City Police Department, testified that while on patrol on July 11, 2020, he observed a stopped vehicle facing eastbound at the intersection of East Mark Street and North Greenwood. (Feb. 15, 2022 Tr. at 130-131). Lieutenant Wheeler testified that as he passed the vehicle, he ran the license plate through ILINCS, a law-enforcement database, and learned that the vehicle was registered to Susan Hardgrove, a female from Delaware, Ohio. (*Id.* at 131-132). According to Lieutenant Wheeler, the ILINCS system allows law enforcement officers to add notes to vehicles in the system regarding previous drivers, occupants, and safety

-2-

concerns. (*Id.*). Lieutenant Wheeler observed a note associated with the vehicle listing Troche as a previous occupant. (*Id.* at 132). When Lieutenant Wheeler ran the information associated with Troche through ILINCS, he was able to view Troche's BMV photograph. (*Id.*). Lieutenant Wheeler also learned that Troche's driver's license was suspended and the Marion City Police Department had an active warrant for his arrest. (*Id.*). When Lieutenant Wheeler passed the vehicle, he observed the male driver and noted that he appeared to be the person depicted in Troche's BMV photograph. (*Id.* at 132-133).

{¶4} Lieutenant Wheeler testified that, in the process of turning around his police cruiser, he briefly lost sight of the vehicle. (*Id.* at 132). However, shortly thereafter, he observed the vehicle in the driveway of 525 Tyler Street in Marion, Ohio. (*Id.*). At the time Lieutenant Wheeler made contact with Troche, he was outside the vehicle. (*Id.* at 133). Lieutenant Wheeler approached Troche by calling out his name; however, Troche repeatedly denied that it was his name. (*Id.*). However, Lieutenant Wheeler stated that he "confirmed" the individual he was talking to was Troche through the BMV photograph and an assisting officer who identified Troche from a previous encounter. (*Id.*).

{¶5} Then, Lieutenant Wheeler placed Troche under arrest. (Feb. 15, 2022 Tr. at 133). At the time, Troche maintained that his name was not Robert Troche and alleged that the police were "harassing" him. (*Id.*). So, Lieutenant Wheeler

escorted Troche to his cruiser and showed him the BMV photograph visible on the computer screen. (*Id.* at 133-134). Lieutenant Wheeler recalled that he asked Troche, "Is that you?" Troche did not give a response. (*Id.* at 134).

**{¶6}** Lieutenant Wheeler explained that pursuant to Marion Police Department policy, officers are not permitted to leave a vehicle parked on private property without the consent of the property owner or manager. (*Id.* at 142). Lieutenant Wheeler stated that he knocked on the door of 525 Tyler Street in an attempt to make contact with the owners, but there was no answer. (*Id.* at 134). According to Lieutenant Wheeler, if officers do not receive permission to leave a vehicle on private property, the officer's options are to tow the vehicle off the property or allow the vehicle's owner to move the vehicle from the property, if it can be accomplished in a timely fashion. (*Id.*). Lieutenant Wheeler then called Hardgrove, who confirmed that her son, Troche, had her consent to use the vehicle. (*Id.*). Hardgrove, who was located in Delaware, Ohio, informed Lieutenant Wheeler that she would immediately travel to 525 Tyler Street to retrieve her vehicle. (*Id.* at 142, 150).

**{¶7}** While Lieutenant Wheeler waited for Hardgrove to arrive on the scene, he deployed his canine partner to conduct an exterior vehicle sniff to detect the odor of narcotics and the canine gave a positive alert. (*Id.* at 134-136). Then, Lieutenant

Wheeler stated that he searched the vehicle.[1] (*Id.* at 134). During the search, he located a black case in the driver's door pocket. (*Id.* at 134, 136). Lieutenant Wheeler identified the black case he removed from the vehicle as State's Exhibit 1. (*Id.* at 136); (State's Ex. 1). Inside the case, Lieutenant Wheeler described locating two baggies that contained suspected narcotics. (Feb. 15, 2022 Tr. at 136-137). Lieutenant Wheeler identified State's Exhibit 2 as the suspected narcotics he removed from the black case. (*Id.* at 137); (State's Ex. 2).

{¶8} State's Exhibit 3, Lieutenant Wheeler's body camera footage of the incident on July 11, 2020 was played for the jury. (Feb. 15, 2022 Tr. at 139-142); (State's Ex. 3). The body camera footage was consistent with Lieutenant Wheeler's testimony regarding the events of July 11, 2020. (State's Ex. 3). Additionally, the body camera footage depicted Lieutenant Wheeler finding a bag of marijuana in the center console of the vehicle. (*Id.*). In the body camera footage, Troche admitted the marijuana belonged to him and explained that he has a medical marijuana card. (*Id.*).

{¶9} On cross-examination, Lieutenant Wheeler admitted that he did not witness Troche make furtive movements. (Feb. 15, 2022 Tr. at 146-147). Likewise, he did not observe Troche "scrambl[e]" or throw any objects away from the vehicle.

---

[1] On May 20, 2021, Troche filed a motion to suppress which sought to suppress the evidence obtained during the search. In a judgment entry filed on December 10, 2021, the trial court denied the motion. Troche does not challenge that ruling on appeal.

(*Id.* at 147). Lieutenant Wheeler also listed other items he located in the driver's door pocket including a coin purse and a bottle of "female cologne." (*Id.* at 148-149). Lieutenant Wheeler acknowledged that he did not know when the black case containing the suspected drugs was brought into the vehicle and did not observe anyone place it there. (*Id.* at 152-153). He also conceded that he did not know how long the black case had been in the vehicle. (*Id.* at 153). Lieutenant Wheeler further stated that he could not testify whether Troche knew that the case containing the suspected drugs was inside the vehicle. (*Id.*).

{¶10} On redirect examination, Lieutenant Wheeler testified that Troche was smoking a cigarette when Lieutenant Wheeler first approached him. (*Id.* at 153-154). Lieutenant Wheeler described finding two packages of Newport cigarettes inside the vehicle. (*Id.* at 154). One package of Newport cigarettes was located in the driver's door pocket. (*Id.* at 153). Additionally, according to Lieutenant Wheeler, when he located the black case in the driver's door pocket, the case was sitting on the top of the other items located therein, including the Newport cigarettes. (*Id.* at 153-154). Lieutenant Wheeler confirmed that officers did not locate cigarettes on Troche's person when he was searched incident to his arrest. (*Id.* at 154). Additionally, Lieutenant Wheeler verified Troche was inside the vehicle at the same time as the black case containing the suspected drugs was inside the vehicle. (*Id.* at 154-155).

{¶11} During recross examination, Lieutenant Wheeler stated the pack of Newport cigarettes located in the driver's door pocket appeared to be sealed. (*Id.* at 155). However, the second package of Newport cigarettes, which was located next to the marijuana in the center console, was open. (*Id.*). Lieutenant Wheeler confirmed that Troche acknowledged that the marijuana was his, but that he claimed to have a medical marijuana card. (*Id.* at 155-156). Lieutenant Wheeler testified that although Troche took responsibility for the marijuana, he denied the contents of the black case belonged to him. (*Id.* at 156).

{¶12} At the close of the State's evidence, Troche moved for a judgment of acquittal under Crim.R. 29. Troche argued generally that the State failed to meet its burden of proof with respect to all elements of the offenses. Troche specifically argued the State failed to establish that he knowingly possessed the drugs. The trial court overruled Troche's Crim.R. 29 motion, after which Troche rested without presenting any evidence.

{¶13} The jury found Troche guilty on both counts as charged in the indictment. The trial court accepted the jury's verdicts and continued Troche's sentencing pending completion of a presentence investigation report.

{¶14} At the sentencing hearing on March 7, 2022, the trial court sentenced Troche to nine months in prison on Count One and nine months in prison on Count Two. The court ordered the sentences to run consecutively for an aggregate prison

term of 18 months. On March 9, 2022, the trial court filed its judgment entry of sentence.

{¶15} Troche filed a notice of appeal on April 7, 2022. He raises four assignments of error for our review. For ease of discussion, we elect to address his first two assignments of error together.

### Assignment of Error No. I

**The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A) on the Possession of Fentanyl [Charge] in violation of O.R.C. 2925.11(A)(C)(11), and the Aggravated Possession of Drugs Charge in violation of O.R.C. 2925.11(A)(C)(1) and thereafter entering a judgment of conviction on these offenses as the charges were not supported by sufficient evidence.**

### Assignment of Error No. II

**The jury verdict on the Possession of Fentanyl and the Aggravated Possession of Drugs Charge[s] were against the manifest weight of the evidence presented at trial.**

{¶16} In his first assignment of error, Troche argues that his convictions are not supported by sufficient evidence. Specifically, Troche maintains the State presented insufficient evidence that he "knowingly" possessed the drugs contained in the black case. Accordingly, Troche contends the trial court abused its discretion by denying his Crim.R. 29 motion with respect to both counts. In his second assignment of error, Troche alleges the weight of the evidence weighs against his convictions.

*Standards for Sufficient-of-the Evidence, Crim.R. 29,*
*and Manifest Weight Review*

**{¶17}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.

**{¶18}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶19} Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because the purpose of a Crim.R. 29 motion for acquittal 'is to test the sufficiency of the evidence presented at trial,' we 'review[] a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim.'" (Bracketing in original.) *State v. Brown*, 3d Dist. Allen No. 1-19-61, 2020-Ohio-3614, ¶ 35, quoting *State v. Willis*, 12th Dist. Butler No. CA2009-10-270, 2010-Ohio-4404, ¶ 9.

{¶20} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard,

"[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### *Troche's Offenses*

**{¶21}** We first review the sufficiency of the evidence supporting Troche's convictions. Troche was found guilty of possession of fentanyl in violation of R.C. 2925.11(A), (C)(11) and aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1), respectively.

**{¶22}** Possession of drugs under R.C. 2925.11(A) provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Count One relates to the heroin and fentanyl combination recovered from the vehicle and Count Two relates to the methamphetamine recovered from the vehicle.

**{¶23}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

**{¶24}** On appeal, Troche argues only that there is insufficient evidence that he had knowledge of the drugs found in the black case. He challenges the State's

evidence that he *knowingly* possessed the drugs located in the black case in light of the evidence that the vehicle was registered to his mother. Troche asserts that there was insufficient evidence to establish that he possessed the drugs in the black case because constructive possession requires proof that he was not only able to exercise dominion and control over the items, but also that he was conscious of the presence of the items. Because knowledge is the only element Troche challenges on appeal, our review is limited to determining whether sufficient evidence was presented that Troche had knowledge of the drugs found in the black case of the driver's door pocket.

{¶25} "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 45, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998). The Ohio Revised Code defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

**{¶26}** "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26 and 13-13-04, 2013-Ohio-4975, ¶ 25. "A person has 'actual possession' of an item if the item is within his immediate physical possession." *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Bustamante* at ¶ 25. "For constructive possession to exist, '[i]t must be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

**{¶27}** "[T]he State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id.* "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19. "Inherent in a finding of constructive possession is that the defendant was conscious of the item and therefore had knowledge of it." *State v. Alexander*, 8th Dist. Cuyahoga No. 90509, 2009-Ohio-597, ¶ 24, citing *Hankerson* at syllabus and *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

**{¶28}** To summarize the evidence the State presented related to Troche's knowledge of the drugs contained within the black case, Troche was the driver and sole occupant of the vehicle. Lieutenant Wheeler contacted Troche's mother, the registered owner of the vehicle, who confirmed that Troche had her permission to use the vehicle. Lieutenant Wheeler found the drugs in a black zippered case located in the driver's door pocket, a location easily accessible to the driver. The black case containing the controlled substances was located on the top of the other objects in the driver's door pocket, including a package of Newport cigarettes. Moreover, when Lieutenant Wheeler made initial contact with Troche, he was smoking a cigarette. The only cigarettes found in the search of the vehicle and the search of Troche's person incident to arrest were Newport cigarettes.

**{¶29}** "A jury can make reasonable inferences from the evidence." *State v. Knight*, 10th Dist. Franklin No. 16AP-288, and 16AP-290, 2016-Ohio-8134, ¶ 26. "'It is permissible for a jury to draw inferences from the facts presented to them.'" *Id.*, quoting *State v. Sanders*, 6th Dist. Lucas No. L-96-379, 1998 WL 78787, *3 (Feb. 13, 1998), citing *State v. Palmer*, 80 Ohio St.3d 543, 561 (1997). There are numerous inferences that can be made from the State's evidence that Troche was aware of the presence of the contents of the zippered black case. For example, the fact that the black case was on top of the other items contained inside the driver's door pocket, including Newport cigarettes, leads to an inference that Troche was

aware of the presence of the black case and the controlled substances that it contained.

**{¶30}** Troche contends that his acknowledgement of ownership of the cigarettes and marijuana contained in the center console, combined with his denial of knowledge of the items contained within the black case, leads to an inference that he was not aware of the black case or its contents. This argument largely relates to the weight of the evidence rather than sufficiency of the evidence. *See State v. Shelby*, 6th Dist. Wood No. WD-17-056, 2019-Ohio-1564, ¶ 27 ("[A]ppellant's argument—that either Britton or Holmes 'could have placed' the drugs into his hand—speaks to the weight, not the sufficiency of the evidence."). Nevertheless, Troche's assertion that the drugs in the black case did not belong to him is inconsequential in light of the evidence that Troche had dominion and control over those items. *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894, ¶ 53, quoting *State v. Grundy*, 9th Dist. Summit No. 19016, 1998 WL 852844, *10 (Dec. 9, 1998) ("'It is also irrelevant that he did not admit that the cocaine was his. Sufficient evidence existed that Defendant had exercised dominion and control over the cocaine, and was in constructive possession of the substance.'").

**{¶31}** Furthermore, even assuming Hardgrove *also* had access to the drugs in the black case, as Troche implies, does not vitiate Troche's conviction since Troche and Hardgrove could have had joint possession and control of the drugs.

*State v. Hudson*, 8th Dist. Trumbull No. 2014-T-0097, 2018-Ohio-133, ¶ 57, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 78277, 2001 WL 563077 (May 24, 2001) ("holding that '[j]oint possession * * * exists when two or more persons together have the ability to control an object, exclusive of others'").

{¶32} Thus, when examining the evidence in the light most favorable to the State, we find that a rational trier of fact could have found that Troche was aware of the drugs inside the black case. *See State v. Willamson*, 2d Dist. Montgomery No. 27147, 2017-Ohio-7098, ¶ 15, 58 (sufficient evidence supported the conclusion that the defendant knowingly possessed the heroin and cocaine where officers found a bag of heroin capsules on the passenger seat of the vehicle and an additional baggie of cocaine "in the middle console of the car, in the ashtray, just below the radio [both of which] would have been easily accessible to the driver.").

{¶33} Having determined that sufficient evidence supports his convictions, we turn to Troche's arguments that his convictions are against the manifest weight of the evidence. In support of this assertion, Troche largely relies on similar arguments to those relating to the sufficiency of the evidence.

{¶34} Troche argues that his convictions are against the manifest weight of the evidence because the State could not conclusively establish that Troche placed the black case containing the drugs into the vehicle. However, as noted above, the jury is able to make reasonable inferences based on the evidence presented at trial.

*See Knight*, 2016-Ohio-8134, at ¶ 26. "'The weight given to an inference is a question for the trier of fact and will not be disturbed unless it is such that reasonable minds could not reach such a conclusion.'" *Id.*, quoting *Sanders*, 1998 WL 78787, at \*3, citing *Palmer,* 80 Ohio St.3d 543, at paragraph four of the syllabus. As discussed in our sufficiency-of-the-evidence analysis, the State did not need to establish that Troche owned or even placed the black case containing the drugs in the vehicle for the jury to determine that he had dominion and control over the drugs.

{¶35} Troche also argues that his admission to the ownership of the cigarettes and marijuana found near the center console lends credibility to his denial of knowledge of the drugs located in the black case in the driver's door pocket. However, through his own statements, Troche did not believe the cigarettes and marijuana were illegal. Accordingly, Troche's admission to ownership of those items does not bolster his credibility such that the jury clearly lost its way by choosing not to believe that he was unaware of the black case containing drugs in the driver's door pocket.

{¶36} Additionally, Troche contends that the fact that the marijuana and opened package of Newport cigarettes were found in a different location from the unopened package of Newport cigarettes and the black case containing the drugs at issue weighs heavily against the jury's finding that he knowingly possessed the drugs. We disagree. Although Troche's appellate brief implies otherwise,

knowledge of the marijuana and cigarettes in the center console is not mutually exclusive to knowledge of the contents of the driver's door pocket. Furthermore, the weight given to inferences made from the locations of items recovered from the vehicle is primarily a question for the trier of fact. Because reasonable minds could conclude that Troche had knowledge of the contents of the center console and the driver's door pocket, we will not disturb the jury's finding with respect to this issue.

{¶37} We conclude that the jury could reasonably infer from the evidence presented at trial that Troche exercised dominion and control over the drugs located in the black case. After reviewing the evidence presented at trial, we do not find that the jury lost its way in concluding that Troche knowingly possessed the items contained in the black case. Accordingly, Troche's possession-of-fentanyl and aggravated-possession-of-drugs convictions are not against the manifest weight of the evidence. *See Hudson*, 2018-Ohio-133, at ¶ 60 (rejecting a similar manifest-weight-of-the-evidence argument).

{¶38} Troche's first and second assignments of error are overruled.

### Assignment of Error No. III

**The Trial Court abused its discretion by imposing a prison sentence contrary to R.C. 2929.11 and the purposes and principles of the felony sentencing guidelines.**

{¶39} In his third assignment of error, Troche argues that his sentence is contrary to law.

*Standard of Review*

**{¶40}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Relevant Authority*

**{¶41}** "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. A sentence imposed within the statutory range is generally valid so long as the trial court considered the applicable statutory policies that apply to every felony sentencing, including those contained in R.C. 2929.11, and the sentencing factors of 2929.12. *See State v. Watts*, 3d Dist. Auglaize No. 2-20-10, 2020-Ohio-5572, ¶ 10, 14; *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31.

**{¶42}** R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs courts to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* In addition, R.C. 2929.11(B) instructs that a sentence imposed for a felony "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶43}** "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10, citing R.C. 2929.12(A). In addition, the trial court must consider "the factors set forth in [R.C. 2929.12(F)] pertaining to the offender's service in the armed forces of the United States." R.C. 2929.12(A). "'A sentencing court has broad discretion to determine

the relative weight to assign the sentencing factors in R.C. 2929.12.'" *Smith* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

*Analysis*

**{¶44}** In the instant case, Troche was sentenced for one count of possession of fentanyl in violation of R.C. 2925.11(A), (C)(11) and one count of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1), fifth-degree felonies. For these fifth-degree-felony offenses, "the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months." R.C. 2929.14(A)(5). The trial court sentenced Troche to nine months in prison on each of the counts, which is within the statutory range.[2]

**{¶45}** Furthermore, the record reflects that the trial court considered R.C. 2929.11 and 2929.12 when it sentenced Troche. At the sentencing hearing, the trial court stated that it "considered" the purposes and principles of felony sentencing set forth in R.C. 2929.11 including protecting the public from future crime by the offender and others and punishing the offender using the minimum sanctions that the court determines accomplishes those purposes without imposing an unnecessary burden on state or local governmental resources. (Mar. 7, 2020 Tr. at 5-6). The trial court also stated that it considered the need for incapacitating Troche, deterring

---

[2] The trial court ordered the sentences to be served consecutively for an aggregate prison term of 18 months. (Doc. No. 59). However, Troche does not challenge the consecutive nature of his sentence.

Troche and others from future crime, rehabilitating Troche, and making restitution. (*Id.* at 6).

{¶46} The trial court also considered the seriousness and recidivism factors set forth in R.C. 2929.12. (*Id.* at 6-7). In its discussion of R.C. 2929.12, the trial court stated that "none of the seriousness factors are indicated, but there are several recidivism factors showing that recidivism is likely." (*Id.* at 6). Specifically, the trial court referenced Troche's criminal history, failure to respond favorably to sanctions imposed for prior criminal convictions, Troche's pattern of substance abuse, and his unwillingness to seek substance-abuse treatment. (*Id.* at 6-7). The trial court also noted Troche had been unfavorably terminated from prior community control supervision and had an ORAS score of 25, which the trial court described as "on the high end." (*Id.* at 7). The trial court recognized Troche's offenses in the instant case were low-level felonies. (*Id.* at 6). However, while reviewing Troche's criminal history, the court noted Troche had several felony charges and "many misdemeanor charges." (*Id.*). The trial court also indicated that Troche was charged with two misdemeanor charges—driving under suspension and possession of marijuana—while he was out on bond in this matter. (*Id.*). Furthermore, in its judgment entry of sentence, the trial court indicated that it "carefully considered the purposes and principles of sentencing in accordance with

R.C. 2929.11 and the appropriate seriousness and recidivism factors in accordance with R.C. 2929.12." (Doc. No. 59).

**{¶47}** "A trial court's statement that it considered the required statutory factors * * * is sufficient to fulfill its obligations under the sentencing statutes." *Maggette*, 2016-Ohio-5554, at ¶ 32, citing *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, ¶ 14, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18. Therefore, because Troche's sentence is within the statutory range and the record supports that the trial court fulfilled its obligation of considering R.C. 2929.11 and 2929.12, Troche's sentence is valid. *See Watts*, 2020-Ohio-5572, at ¶ 14.

**{¶48}** Nevertheless, Troche argues that his sentence is "inconsistent" with the purposes of felony sentencing because his offenses were low-level felonies, the offenses were not violent, and there was no victim. Additionally, Troche claims he accepted responsibility for his actions, had already been incarcerated for approximately one month prior to sentencing, and his most recent felony conviction was in 2015.

**{¶49}** Although "R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions[,] * * * R.C. 2929.11 and 2929.12 are not among the statutory provisions

listed in R.C. 2953.08(G)(2)(a)." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 28. Furthermore, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Thus, R.C. 2953.08(G)(2) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. "[A]n appellate court errs if it * * * modifies or vacates a sentence 'based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12.'" *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 17, quoting *Jones* at ¶ 29.

**{¶50}** Accordingly, even if we were to agree with Troche that his sentence is not supported by the record under R.C. 2929.11 and 2929.12, we could not vacate or modify his sentence on that basis. As discussed above, Troche's sentence is within the statutory range and it is clear that the trial court considered R.C. 2929.11 and 2929.12 when fashioning his sentence. Thus, Troche's sentence is not clearly and convincingly contrary to law, and it must be affirmed. *See State v. Slife*, 3d Dist. Auglaize No. 2-20-17, 2021-Ohio-644, ¶ 17.

**{¶51}** Troche's third assignment of error is overruled.

**Assignment of Error No. IV**

**Defendant-Appellant was deprived of his rights to due process and a fair trial under the federal and state constitutions by the cumulative effect of the numerous errors in this case.**

{¶52} In his fourth assignment of error, Troche summarily argues that he was deprived of a fair trial due to the cumulative effect of the alleged errors outlined in his other three assignments of error. We disagree.

{¶53} Under the cumulative-error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83. "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *In re J.M.*, 3d Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36. Here, we have not found that the trial court committed any errors, let alone, multiple errors. Therefore, the cumulative-error doctrine does not apply. *See State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-5122, ¶ 40, *abrogated on other grounds, State v. Haynes*, ___ Ohio St.3d ___, 2022-Ohio-4473. ("If there [are] not multiple errors, * * * the cumulative error doctrine does not apply."); *State v.*

*Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 104, citing *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

**{¶54}** Troche's fourth assignment of error is overruled.

**{¶55}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**