[Cite as *State v. Johnson*, 2025-Ohio-1009.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MYRON WITHERS JOHNSON,

    DEFENDANT-APPELLANT.

CASE NO. 9-23-82

**O P I N I O N**

---

**Appeal from Marion County Common Pleas Court**
**General Division**
**Trial Court No. 21-CR-451**

**Judgment Affirmed**

**Date of Decision: March 24, 2025**

---

**APPEARANCES:**

    *April F. Campbell* **for Appellant**

    *Allison M. Kesler* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Myron W. Johnson ("Johnson"), appeals the November 29, 2023 judgment of sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On October 13, 2021, the Marion County Grand Jury indicted Johnson on six counts. The first three counts were drug trafficking offenses: Count One of trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4), a first-degree felony; Count Two of trafficking in heroin in violation of R.C. 2925.03(A)(2), (C)(6), a fourth-degree felony; and Count Three of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2), (C)(11), a fifth-degree felony. Each drug trafficking charge had a corresponding drug possession charge: Count Four of possession of cocaine in violation of R.C. 2925.11(A)(4), (C), a first-degree felony; Count Five of possession of heroin in violation of R.C. 2925.11(A), (C)(6), a fourth-degree felony; and Count Six of possession of fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11), a fifth-degree felony.

{¶3} Johnson appeared for arraignment on October 18, 2021 and entered a plea of not guilty. On February 7, 2022, Johnson filed a motion to suppress evidence. A hearing was held on this motion on October 14, 2022, and a judgment entry denying the motion to suppress was filed on November 4, 2022.

**{¶4}** On October 25, 2023, Johnson appeared for trial. At the commencement of trial, Johnson made a motion to dismiss the case on the basis that his right to a speedy trial was violated.[1] The trial court denied Johnson's motion and proceeded to trial.

**{¶5}** At trial, Officer Matthew Creps ("Officer Creps"), a member of MARMET, a combined task force that investigates and handles drug-related crimes in Marion County, testified that, on October 6, 2021, he and other members of MARMET executed a drug search warrant at 407 Latourette Street in Marion, Marion County, Ohio. (Oct. 25, 2023 Tr. at 108-109). Officer Creps located Johnson in an upstairs bedroom at the residence sitting on the edge of a bed. (*Id.* at 109). Officer Creps instructed Johnson to stand and he was secured in handcuffs. (*Id.* at 110). After advising Johnson of his *Miranda* rights, Johnson denied having drugs on his person. (*Id.*).

**{¶6}** According to Officer Creps, when he attempted to search Johnson incident to arrest, he was able to check Johnson's waistband for weapons and contraband. Officer Creps testified that it is typical practice for officers to pat down the arrestee's groin area for weapons or contraband because that area is a common hiding spot for such items. (*Id.* at 110). Officer Creps removed $744 in cash from Johnson's waistband, but when he asked Johnson to spread his legs, Johnson spread

---

[1] That same day, Johnson filed a written motion to dismiss on the grounds that his right to a speedy trial had been violated. (Doc. No. 138).

his legs "just a few inches," and Officer Creps was unable to check his groin area for weapons or contraband. (*Id.* at 110-111). Officer Creps stated that he and another officer on the scene asked Johnson several more times to spread his legs, but, again, Johnson refused to comply. (*Id.* at 111).

{**¶7**} Officer Rob Gery ("Officer Gery"), an officer with the Marion Police Department, testified that he assisted MARMET in executing the search warrant on 407 Latourette Street on October 6, 2021. (Oct. 25, 2023 Tr. at 80-81). Officer Gery testified that he transported Johnson to the Multi County Correctional Center ("MCCC"). (*Id.* at 83, 89-91). Officer Gery, stated that as he arrived at the sally port at MCCC, Johnson told Officer Gery that he wanted to speak to him because "he had some stuff on him." (*Id.* at 83). Officer Gery's body-worn camera footage was introduced as State's Exhibit 6. (*Id.* at 89-90). In that video, Johnson admits to having drugs on his person. (State's Ex. 6). When Officer Gery asked Johnson where they were located, he replied "under my nuts." (State's Ex. 6).

{**¶8**} Lieutenant Steven Aiken ("Lieutenant Aiken"), who is now the director of MCCC, testified that on October 6, 2021, he arrived in the sally port to assist with Johnson's arrival and search. (Oct. 25, 2023 Tr. at 101-103). After learning that Johnson admitted to having drugs on him, he escorted Johnson to a private dressing area to perform a strip search of him. (*Id.* at 103-104). Lieutenant Aiken testified that, at the beginning of the search, Johnson reached into the front of his pants, pulled out a bag full of white substance, and handed that bag to him. (*Id.*).

-4-

Lieutenant Aiken recalled that Johnson told him that the bag contained "cocaine, fentanyl, and heroin." (*Id.* at 104). After Lieutenant Aiken and another officer completed the search of Johnson, Lieutenant Aiken exited the dressing area and handed the bag to Officer Gery who entered it into evidence. (*Id.* at 105, 113); (State's Ex. 6).

{¶9} Anthony Tambasco ("Tambasco"), a forensic scientist and the Director of the Mansfield Police Department forensic laboratory, was qualified as an expert witness and testified regarding the analysis he performed on the suspected drugs. (Oct. 25, 2023 Tr. at 121, 123, 125); (State's Ex. 7). Tambasco identified State's Exhibit 2 as 57.39 grams of cocaine, State's Exhibit 3 as 0.18 grams of a mixture containing cocaine and para-fluorofentanyl, and State's Exhibit 4 as 2.37 grams of a mixture containing cocaine, fentanyl, and heroin. (Oct. 25, 2023 Tr. at 131-132); (State's Ex. 7).

{¶10} Officer Creps testified that he has dealt with drug cases for his "entire career" and that, in his experience, individual drug users usually possess a smaller amount of drugs. (Oct. 25, 2023 Tr. at 114-115). Officer Creps testified that the market value of cocaine is approximately $100 per gram, so the quantity of cocaine found on Johnson would be valued at approximately $6,500. (*Id.* at 115). Officer Creps attested that a typical user does not possess the amount of drugs found on Johnson. (*Id.*). He stated that most people do not have access to $6,500 to spend on drugs and that most users would "use it too fast." (*Id.*). Accordingly, Officer

Creps opined that the amount of cocaine found on Johnson is more consistent with distribution or sale than personal use. (*Id.*).

{¶11} The jury returned guilty verdicts to all of the counts. The trial court accepted the jury's verdicts, found Johnson guilty, and continued the matter for sentencing.

{¶12} At the sentencing hearing on November 27, 2023, the trial court found that Counts One and Four, Counts Two and Five, and Counts Three and Six were allied offenses of similar import, and merged those counts for sentencing. The State elected to proceed to sentencing on Count One (trafficking in cocaine), Count Two (trafficking in heroin), and Count Three (trafficking in a fentanyl-related compound). The trial court sentenced Johnson to an indefinite term of 11 years to 16 1/2 years in prison on Count One, 18 months in prison on Count Two, and 12 months in prison on Count Three. Further, the court ordered the sentences to be served consecutively for an aggregate term of 13 1/2 to 19 years in prison. The trial court also imposed a mandatory drug fine of $10,000 on Count One and ordered the forfeiture of the $744 in U.S. currency. The trial court filed its judgment entry of sentence on November 29, 2023.

{¶13} On December 21, 2023, Johnson filed his notice of appeal. He raises four assignments of error for our review.

**First Assignment of Error**

**Johnson's right to a speedy trial was violated.**

{¶14} In his first assignment of error, Johnson argues that his right to a speedy trial was violated. Specifically, he argues that the trial court should have granted his motion to dismiss on the basis that he was not brought to trial within the statutory timeframe. For the reasons that follow, we disagree.

*Standard of Review*

{¶15} "[S]peedy trial issues present mixed questions of law and fact." *State v. Marr*, 2018-Ohio-5061, ¶ 15 (3d Dist.). "[W]e apply a de novo standard of review to the legal issues but give deference to any factual findings made by the trial court." *Id.*

*Applicable Law*

{¶16} "'An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10.'" *State v. Irish*, 2019-Ohio-2765, ¶ 11 (3d Dist.), quoting *State v. Dahms*, 2017-Ohio-4221, ¶ 102 (3d Dist.). "'The proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72.'" *Dahms* at ¶ 102, quoting *State v. Ferguson*, 2016-Ohio-8537, ¶ 12 (10th Dist.).

**{¶17}** "R.C. 2945.71 provides the timeframe for a defendant's right to a speedy trial based on the level of offense." *State v. Matland*, 2010-Ohio-6585, ¶ 19 (7th Dist.). R.C. 2945.71 provides that "[a] person against whom a charge of felony is pending . . . [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "This 270-day period may be extended for one or more of the reasons listed in R.C. 2945.72(A)-(I)." *Irish* at ¶ 12. Absent any such extension, failure to bring a defendant to trial within the 270-day period subjects the case to dismissal upon motion of the defendant. *Id.*, citing R.C. 2945.73(B). "The date of the arrest is not included for the purpose of calculating time under the statutes for a speedy trial." *State v. Taylor*, 2014-Ohio-1793, ¶ 27 (3d Dist.). "However, each day the defendant spends in jail solely on the pending criminal charge counts as three days." *Matland* at ¶ 19, citing R.C. 2945.71(E).

**{¶18}** "R.C. 2945.72 allows for an extension of time that the accused must be brought to trial under certain circumstances." *Taylor* at ¶ 28. Excluded from the speedy trial calculation is "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E). Also excluded from the speedy-trial calculation is "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H).

*Analysis*

**{¶19}** After reviewing the record, we do not find the trial court erred by denying Johnson's motion to dismiss on the basis of a violation of his constitutional right to a speedy trial.

The record indicates as follows:

- Johnson was arrested on the instant case on October 6, 2021. On October 18, 2021, Johnson posted bond. Because Johnson was incarcerated between October 6, 2021 and October 18, 2021, each one of those days counted as three days. Accordingly, 12 days passed which equated to 36 days of speedy trial time.

- On October 19, 2021 Johnson filed a demand for discovery and a request for a bill of particulars. This constituted one additional day of speedy trial time.

- On November 10, 2021, the State responded to Johnson's demand for discovery, ending the tolling event. When, on November 30, 2021, Johnson's defense counsel filed a motion moving to withdraw from the case, thereby tolling the clock, 20 additional days of speedy trial time had passed.

- On December 8, 2021, the trial court granted Johnson's counsel's motion for new counsel and Johnson filed a motion requesting a continuance of the jury trial scheduled for January 11, 2022. On December 10, 2021, the trial court granted Johnson's motion for a continuance. An assignment notice scheduling the trial for March 8, 2022 was filed by the trial court on December 14, 2021. Thus, speedy trial time was tolled until March 8, 2022.

- Johnson filed a number of motions on February 7, 2022; to wit: a motion to suppress, and two motions to compel evidence. The trial court ruled on Johnson's motion to suppress on November 4, 2022 and on Johnson's motions to compel on December 5, 2022. Accordingly, speedy trial time was tolled from February 7, 2022 through December 5, 2022.

- On February 7, 2022, Johnson was indicted on additional charges in another case, and, thus, was incarcerated on both cases. *See* R.C. 2945.71(E).

- The speedy trial clock ran from December 5, 2022 until February 22, 2023 when Johnson filed a motion to modify bond and for the preparation of transcripts. During that time, 79 additional days were accrued.

- An order to continue was filed on February 24, 2023. The order, which was signed by all parties, including Johnson himself, specified that "Defendant waives the right to speedy trial for the period of this continuance as to the pending charge(s)." (Doc. No. 82). Accordingly, the speedy trial clock was tolled until the new trial date scheduled for May 9, 2023.

- On April 28, 2023, a judgment entry was filed indicating that upon the defendant's motion for a continuance on the basis of having new counsel appointed, the trial set for May 9, 2023 was continued to August 15, 2023. The judgment entry specified that "Defendant waives the right to a speedy trial for the period of this continuance as to the pending charges." (Doc. No. 96).

- An assignment notice was filed on May 18, 2023 resetting the jury trial for September 11, 2023. There is no explanation in the record for this rescheduling. Consequently, the time from August 15, 2023 until the next tolling event (i.e., September 6, 2023) would count against the speedy trial time.

- On September 6, 2023, Johnson requested a continuance of the September 11, 2023 jury trial, which the trial court granted. The trial was rescheduled for October 10, 2023. From August 15, 2023 until September 6, 2023 constitutes 22 days charged against the State.

- When the October 10, 2023 trial date arrived, Johnson orally requested a continuance of the trial citing several reasons, including lack of street clothes for trial and difficulty electronically accessing certain items of discovery. The trial court granted Johnson's motion for a continuance and the trial was rescheduled until October 25, 2023.

{¶20} At the commencement of the October 25, 2023 trial, Johnson made an oral motion to dismiss on the basis that his right to a speedy trial had been violated and simultaneously filed a written motion to dismiss on the same grounds. After

hearing arguments, the trial court overruled Johnson's motion and the trial commenced.

**{¶21}** Johnson argues that because 729 calendar days passed between his arrest on the charges in the instant case to the commencement of the trial, his speedy trial rights were violated. Johnson concedes that several tolling events occurred, but alleges that, even with the tolling events, he was not brought to trial within 270 days.

**{¶22}** However, our review of the record, as detailed above, indicates that Johnson was brought to trial well within the 270 days specified by R.C. 2945.71. A number of tolling events, including Johnson's motion to compel and motion to suppress evidence, and several continuances for Johnson's various new counsel to prepare for trial, as well as other tolling events resulted in Johnson being brought to trial within the statutory timeframe.

Moreover, R.C. 2945.73(C)(2) provides that:

Upon motion made at or before the commencement of trial, but not sooner than fourteen days before the day the person would become eligible for release pursuant to division (C)(1) of this section, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after the motion is filed and served on the prosecuting attorney.

**{¶23}** Here, Johnson made his motion to dismiss on October 25, 2023, and the trial commenced that same day. Accordingly, even if Johnson was correct that more than 270 days had passed, he was still brought to trial within 14 days after

filing the motion. Thus, the trial court did not err by overruling Johnson's motion to dismiss.

**{¶24}** Johnson's first assignment of error is overruled.

## Second Assignment of Error

**Johnson's indictment as to count four and count six was void, in violation of the Ohio Constitution and the trial court reversibly erred in amending Johnson's indictment as to counts four and six under Crim.R. 7(D).**

**{¶25}** In Johnson's second assignment of error, he argues the trial court erred by amending the indictment with respect to Counts Four and Six. Johnson alleges the amendment was not permissible under Crim.R. 7 because it changed the identity of the offense.

*Standard of Review and Relevant Law*

**{¶26}** Crim.R. 7(D) governs the amendment of indictments and provides as follows:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial,

or by a postponement thereof to a later day with the same or another jury.

**{¶27}** "Crim.R. 7(D) permits most amendments but prohibits amendments that change the name or identity of the crime charged." *State v. Wilson*, 2019-Ohio-2754, ¶ 13 (4th Dist.). "A trial court commits reversible error when it permits an amendment that changes the name or identity of the offense charged, regardless of whether the defendant suffered prejudice." *Id*. Whether an amendment changes the name or identity of the crime charged is a matter of law which we review de novo. *Id.*, citing *State v. Kittle*, 2005-Ohio-3198, ¶ 10-13 (4th Dist.), citing *State v. Smith*, 2004-Ohio-4786, ¶ 10 (10th Dist.); *State v. Jones*, 2015-Ohio-4116, ¶ 125 (2d Dist.), citing *State v. Frazier*, 2010-Ohio-1507, ¶ 22 (2d Dist.).

**{¶28}** However, where an amendment does not change the name or identity of the offense charged, we review a trial court's decision to allow a Crim.R. 7(D) amendment for an abuse of discretion. *State v. Thompson*, 2016-Ohio-4689, ¶ 11 (9th Dist.), citing *State v. Gray*, 2015-Ohio-1248, ¶ 7 (9th Dist.) and *Frazier* at ¶ 23.

*Analysis*

**{¶29}** Count Four in the indictment, possession of cocaine, stated that Johnson possessed cocaine in an amount that "equals or exceeds 27 grams of cocaine, but is less than 10 grams of cocaine." The indictment, specified that the offense was a first-degree felony and was in violation of R.C. 2925.11(A)(4), (C). (Doc. No. 1).

-13-

{¶30} With respect to Count Six, the caption on the indictment stated that Johnson was charged with "Possession of Fentanyl-Related Compound" in violation of R.C. 2925.11(A), (C)(11). However, the body of the indictment references heroin as the drug at issue. (Doc. No. 1). The indictment indicated that the offense was a fifth-degree felony and referenced R.C. 2925.11(A), (C)(11), which relates specifically to fentanyl.

{¶31} At trial, the State made an oral motion to amend the indictment with respect to Counts Four and Six to correct several scrivener's errors. With respect to Count Four, it requested the trial court amend the "10" to "100" to reflect the language for first-degree felony possession of cocaine. With respect to Count Six, the State made an oral motion to amend the references to "heroin" in the indictment to "fentanyl." The trial court granted the State's requested amendments.

{¶32} Johnson argues that the trial court erred by amending the indictment and alleges that the changes impermissibly altered the name and identity of the offenses. However, after reviewing the record, it is evident that the requested amendments did not change the name or identity of the offenses, but merely fixed typographical errors. Notably, the indictment was sufficient to put Johnson on notice of the name or identity of the offenses charged and the amendments did not impermissibly alter either.

{¶33} Furthermore, although the jury found Johnson guilty of Counts Four and Six, those charges merged at sentencing with Counts One and Three,

-14-

respectively. "Indeed, the Supreme Court of Ohio has explicitly stated that a 'conviction' requires both a finding of guilt and a sentence." *State v. Miller*, 2019-Ohio-4121, ¶ 12 (3d Dist.). Thus, here, since Johnson was not sentenced on Counts Four and Six, error, if any, with respect to the alleged defects in the indictment of those counts is harmless beyond a reasonable doubt.

{¶34} Accordingly, Johnson's second assignment of error is overruled.

### Third Assignment of Error

**The evidence that Johnson trafficked drugs (Counts one through three) was legally insufficient. The evidence also manifestly weighed against convicting Johnson of trafficking.**

{¶35} In his third assignment of error, Johnson argues that his convictions are not supported by sufficient evidence. He also contends that his conviction is against the manifest weight of the evidence.

*Standards of Review*

{¶36} Although Johnson combines the issues into a single assignment of error, manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we review Johnson's arguments and address the sufficiency of the evidence and manifest weight individually.

{¶37} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average

mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶38} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v.*

*Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Johnson's Offenses*

**{¶39}** We first review the sufficiency of the evidence supporting Johnson's convictions. Johnson was convicted of three counts of trafficking in drugs; to wit: trafficking in cocaine (Count One), trafficking in heroin (Count Two), and trafficking in a fentanyl-related compound (Count Three), in violation of R.C. 2925.03(A)(2), which provides:

(A) No person shall knowingly do any of the following:

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

R.C. 2925.03(A)(2).

The Ohio Revised Code defines "knowingly" as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

*Analysis: Sufficiency of Evidence*

**{¶40}** Johnson argues that his drug-trafficking convictions were not based on sufficient evidence. Specifically, Johnson argues that there was no evidence that he prepared or transported drugs or that he knew that the drugs were intended for sale. In support of his argument, Johnson indicates that there was no drug paraphernalia or buy money on Johnson's person at the time of the incident. However, when viewing the evidence in a light most favorable to the State, we find that the jury could find sufficient evidence to uphold Johnson's trafficking convictions.

**{¶41}** Detective Creps testified that, in his experience, the amount of cocaine located on Johnson's person was in excess of an amount he would expect for personal consumption. *State v. Young*, 2010-Ohio-3402, ¶ 19 (8th Dist.) ("We have held in several cases that police officers may testify to the nature and amount of drugs and its significance in drug trafficking."). Moreover, he testified that the cocaine found on Johnson's person was worth approximately $6,500. Additionally, Johnson had $744 located in his waistband. Moreover, the evidence indicates that the cocaine was split into several different bags located within a larger bag. The mixture containing heroin and the mixture containing fentanyl were also separately packaged in smaller bags. Additionally, although no drug paraphernalia was located on Johnson's person, officers testified that drug paraphernalia was located when they searched the residence.

**{¶42}** "A jury can make reasonable inferences from the evidence." *State v. Knight*, 2016-Ohio-8134, ¶ 26 (10th Dist.). "'It is permissible for a jury to draw inferences from the facts presented to them.'" *Id.*, quoting *State v. Sanders*, 1998 WL 78787, *3 (6th Dist. Feb. 13, 1998), citing *State v. Palmer*, 80 Ohio St.3d 543, 561 (1997). There are many inferences that can be made from the State's evidence. For instance, the large quantity of cocaine and the $744 located on Johnson's person could lead to an inference that the drugs were intended for sale. Additionally, the estimated value of the drugs, at approximately $6,500, could also lead to an inference that the drugs were not intended for personal use. Furthermore, the cocaine being separated into smaller bags could lead to an inference that Johnson packaged the cocaine for sale or distribution. Additionally, the mixture containing heroin and the mixture containing fentanyl were packaged separately and were located in the larger bag with the large quantity of cocaine. These inferences are adequate to overcome Johnson's sufficiency challenge.

**{¶43}** Thus, given the totality of the circumstances, when examining the evidence in a light most favorable to the State, we find that a rational trier of fact could have found that Johnson had trafficked the cocaine, mixture of heroin, and mixture containing fentanyl. *See State v. Crowell*, 2020-Ohio-923, ¶ 10 (8th Dist.).

*Analysis: Manifest Weight of the Evidence*

**{¶44}** Having found that sufficient evidence supports Johnson's trafficking convictions, we turn to Johnson's argument that his convictions are against the

manifest weight of the evidence. However, the entirety of Johnson's argument with respect to the manifest weight of the evidence is "[b]ecause there was no evidence of trafficking, the evidence also manifestly weighed against his convictions."[2] (Appellant's Brief at 9). However, as addressed in our discussion of Johnson's arguments with respect to the sufficiency of the evidence, the evidence adduced at trial was sufficient to convict Johnson of the trafficking offenses. Furthermore, having conducted a review of the record and the evidence in accordance with the manifest-weight standard set forth above, we do not find the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial.

{¶45} Accordingly, Johnson's third assignment of error is overruled.

### Fourth Assignment of Error

**Johnson's offenses (Counts One through Three) should have merged.**

{¶46} In his fourth assignment of error, Johnson argues that his convictions for trafficking in cocaine (Count One), trafficking in heroin (Count Two), and

---

[2] We direct counsel to App.R. 12(A)(2), which provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Furthermore, App.R. 16(A)(7) requires an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Here, Johnson failed to include a meaningful argument regarding how the convictions are against the manifest weight of the evidence, and, further, failed to provide citations to the authorities, statutes, and parts of the record that support his argument. Accordingly, we could decline to address Johnson's argument regarding the manifest weight of the evidence. However, in the interest of justice, we elect to address the merits of Johnson's argument.

trafficking in fentanyl-related compound (Count Three) are allied offenses of similar import and should have merged. We disagree.

*Standard of Review*

**{¶47}** We review de novo whether offenses are allied offenses of similar import. *State v. Tall*, 2023-Ohio-1853, ¶ 7 (3d Dist.). "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.). The defendant bears the burden of establishing he or she is entitled to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Washington*, 2013-Ohio-4982, ¶ 18.

*Relevant Law*

**{¶48}** When a defendant's conduct supports multiple offenses, courts apply the allied offenses analysis in R.C. 2941.25 to determine if the offenses merge or if the defendant may be convicted of separate offenses. *State v. Cass*, 2024-Ohio-2614, ¶ 19 (3d Dist.). The statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶49}** The Supreme Court of Ohio has directed the use of a three-part test to determine whether a defendant can be convicted of multiple offenses:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 2015-Ohio-995, ¶ 31.

**{¶50}** "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. With respect to offenses involving multiple types of drugs, courts have recognized that different groups of drugs can pose separate and identifiable harms. *See State v. Daniels*, 2020-Ohio-1496, ¶ 35-36 (8th Dist.) (noting that "while heroin is deadly, fentanyl has been shown to be far more deadly" and concluding that "trafficking in heroin and trafficking in fentanyl pose separate and identifiable harms under *Ruff* and do not merge as allied offenses")

**{¶51}** The term "animus" means "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979), *abrogation recognized in*

-22-

*Ruff*. "Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances." *Id.* "Thus, the manner in which a defendant engages in a course of conduct may indicate distinct purposes." *State v. Whipple*, 2012-Ohio-2938, ¶ 38 (1st Dist.). "Courts should consider whether facts appear in the record that 'distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed.'" *Id.*, quoting *State v. Glenn*, 2012-Ohio-1530, ¶ 9 (8th Dist.).

*Analysis*

{¶52} Johnson argues that because the three drugs were packaged inside one bag, and that the one bag containing all of the drugs was handed over to the corrections officer in a single action, the three trafficking offenses involved a single course of conduct. However, after reviewing the facts, we do not find that the trial court erred in its determination that the trafficking offenses did not merge for sentencing.

{¶53} Johnson's three trafficking offenses each relate to different types of drugs—cocaine, heroin, and fentanyl, respectively. Moreover, the evidence adduced at trial indicates that Johnson was aware of the presence of all three substances. Notably, Lieutenant Aiken recalled Johnson telling him that the bag contained "cocaine, fentanyl, and heroin." (Oct. 25, 2023 Tr. at 104). Officer Gery's body-worn camera footage contains similar statements. (State's Ex. No. 6). Furthermore, the large plastic bag that Johnson pulled out of his pants and handed

to Lieutenant Aiken contained multiple smaller bags, and the different substances were separated into separate plastic bags.

**{¶54}** "[I]t is well established that "'the legislature intended the possession of different drug groups to constitute different offenses.'"" *State v. Jones*, 2024-Ohio-2959, ¶ 55 (3d Dist.), quoting *State v. Polachek*, 2010-Ohio-5421, ¶ 27 (5th Dist.), quoting *State v. Delfino*, 22 Ohio St.3d 270, 273 (1986). "'The argument that simultaneous possession of more than one drug of the same drug schedule constitutes allied offenses of similar import has been rejected many times.'" *Id.*, quoting *State v. Quigley*, 2018-Ohio-1520, ¶ 17 (8th Dist.). Here, the evidence indicated that Johnson trafficked three different drug groups – cocaine, heroin, and fentanyl, and moreover, that he was aware of the presence of the three different drugs. Courts have found that the fact that "the [different] controlled substances were found in the same baggie is of no consequence" because "[e]ach . . . offense required proof as to the specific drug involved and could not be supported by possession of a different controlled substance." *State v. Woodard*, 2017-Ohio-6941, ¶ 35 (12th Dist.). *See State v. Rice*, 2017-Ohio-1504, ¶ 12 (5th Dist.) ("It would thus defeat the legislature's intent to merge the drug possession offenses [for different drugs] into a single offense for purposes of sentencing."). Accordingly, that Johnson trafficked the cocaine, heroin, and fentanyl simultaneously is inconsequential to the analysis. Thus, we find that the trial court did not err by determining that Johnson's trafficking in cocaine, trafficking in heroin, and

trafficking in fentanyl convictions were not allied offenses of similar import. *See Daniels* at ¶ 35-36; *State v. Morgan*, 2019-Ohio-2785, ¶ 21 (5th Dist.); *State v. Ratliff*, 2017-Ohio-2816, ¶ 13 (6th Dist.); *State v. Hunt*, 2018-Ohio-815, ¶ 17-18 (8th Dist.).

{**¶55**} Johnson's fourth assignment of error is overruled.

*Conclusion*

{**¶56**} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

***Judgment Affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

**/jlm**