[Cite as *State v. Ritter*, 2024-Ohio-1336.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

JEREMY K. RITTER,

    DEFENDANT-APPELLANT.

CASE NO. 5-23-23

O P I N I O N

---

**Appeal from Hancock County Common Pleas Court
Trial Court No. 2022CR00119**

**Judgment Affirmed**

**Date of Decision:  April 9, 2024**

---

**APPEARANCES:**

    *W. Alex Smith* **for Appellant**

    *Phillip A. Riegle* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Jeremy K. Ritter ("Ritter") appeals the judgment of the Hancock County Court of Common Pleas, arguing that his conviction for aggravated possession of drugs is not supported by sufficient evidence and is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On the afternoon of February 19, 2022, Officer Ryan Hackworth ("Officer Hackworth") was riding in the passenger seat of a police cruiser when a blue Chrysler began turning on the roadway. He glanced towards the vehicle and noticed that the person in the passenger seat "turned his head away, so * * * his facial features" were no longer visible. (Tr. 263). Officer Hackworth then instructed the driver of the police cruiser to follow the Chrysler.

{¶3} After observing the Chrysler cross the center line on the roadway, the police initiated a traffic stop. At this point, Officer Hackworth observed the driver and the passenger in the vehicle "both lean forward and reach down towards the floorboard of their respective sides of the vehicle." (Tr. 269). Based on these furtive movements, Officer Hackworth believed that the occupants of the vehicle "could be in the process of concealing something * * *." (Tr. 270).

{¶4} As he approached the Chrysler, Officer Hackworth observed a "butane-style lighter in the center console * * *." (Tr. 271). He later testified that this type of lighter is often found alongside drug paraphernalia, such as pipes used to smoke methamphetamines. Ritter was then identified as the driver of the vehicle. At this time, Officer Hackworth noticed that Ritter was "tapping his fingers, biting at his fingernails[,]" and breathing heavily. (Tr. 275). He also saw that Ritter was also looking around the vehicle and was not making eye contact with the officers.

{¶5} Based on these observations, Officer Hackworth requested a K-9 unit be dispatched to that location. In response, Detective Matthew Brunswick ("Detective Brunswick") of the Findlay County Sheriff's Office came to the site of the stop with a detection canine. The dog alerted near the driver's side door of the Chrysler. Ritter and the passenger were then instructed to exit the vehicle so that the police could conduct a search. On exiting the vehicle, the passenger told Officer Hackworth that he had a book bag in the back seat of the vehicle that contained marijuana.

{¶6} However, Detective Brunswick had begun searching the driver's side of the vehicle and noticed a black case "partially sticking out from underneath the driver's seat * * *." (Tr. 230). When he opened the case, he observed baggies that contained a substance that resembled methamphetamine and what appeared to be a "glass methamphetamine pipe." (Tr. 236). Ritter told the police that these items did not belong to him. The police also located a book bag in the back seat that was

situated directly behind where the passenger was sitting. The book bag contained marijuana, syringes, and Suboxone.

**{¶7}** Subsequent testing established that the black case contained 3.46 grams of methamphetamine. On May 10, 2022, Ritter was indicted on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a third-degree felony. A jury trial on these charges commenced on April 24, 2023. The jury returned a verdict of guilty on the charge against Ritter on April 25, 2023. The trial court issued its judgment entry of sentencing on July 7, 2023.

*Assignment of Error*

**{¶8}** Ritter filed his notice of appeal on July 12, 2023. On appeal, he raises the following assignment of error:

> **Jeremy Ritter was convicted against the manifest weight of the evidence and the evidence that he was convicted with was legally insufficient.**

Ritter argues that the State failed to establish that he was in possession of the controlled substances that were located in the vehicle he was driving.

*Legal Standard*

**{¶9}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997). A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial. *State v. Richey*, 2021-Ohio-1461, 170 N.E.3d 933, ¶ 16 (3d

Dist.). On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged. *State v. Smith*, 2023-Ohio-3015, 223 N.E.3d 919, ¶ 19 (3d Dist.). Accordingly, the applicable standard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

{¶10} In contrast, a manifest-weight analysis examines whether the State has carried its burden of persuasion at trial. *State v. Wilson*, 2022-Ohio-504, 185 N.E.3d 176, ¶ 58 (3d Dist.). On review, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 12, quoting *Plott* at ¶ 73.

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *Thompkins* at 387. While an appellate court sits as a "thirteenth juror," it must still "allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-

Ohio-8937, 102 N.E.3d 86, ¶ 37-38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119, quoting *Thompkins* at 387.

{¶11} To prove the offense of aggravated possession of drugs as a third-degree felony, the State must establish that the defendant "[1] knowingly [2] obtain[ed], possess[ed], or use[d] [3] a controlled substance or a controlled substance analog" in an quantity that "equals or exceeds the bulk amount but is less than five times the bulk amount." R.C. 2925.11(A)(1), (C)(1)(b). In turn, R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶12} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26, 13-13-04, 2013-Ohio-4975, ¶ 25.

> "A person has 'actual possession' of an item if the item is within his immediate physical possession." *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130, ¶ 23. "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Bustamante* at ¶ 25. "For constructive possession to exist, '[i]t must be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982).

*State v. Troche*, 3d Dist. Marion No. 9-22-18, 2023-Ohio-565, ¶ 26. "[T]he State may prove * * * constructive possession of contraband by circumstantial evidence alone." *State v. McClain*, 2020-Ohio-1436, 153 N.E.3d 854, ¶ 45 (3d Dist.), quoting *Bustamante* at ¶ 25.

> 'Although a defendant's mere proximity to drugs is in itself insufficient to establish constructive possession, proximity to the drugs may constitute some evidence of constructive possession.' *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, * * * ¶ 20 * * *. 'Therefore, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.' *Id.* * * *

(Citations omitted.) *McClain* at ¶ 46.

> For example, in the automobile context a defendant's 'possession of the keys to the automobile is a strong indication of control over the automobile and all things found in or upon the automobile.' [*State v.*] *Fry*[, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747,] * * * ¶ 41. 'Thus, when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established.' *Id.*

*State v. Silvas*, 3d Dist. Shelby No. 17-21-03, 2021-Ohio-4473, ¶ 14. Similarly, "[f]urtive movements in an automobile may provide sufficient indicia of dominion or control over contraband, allowing an inference of constructive possession." *McClain* at ¶ 46, quoting *State v. Riggs*, 4th Dist. Washington No. 98CA39, 1999 WL 727952, *5 (Sept. 13, 1999).

### *Legal Analysis*

**{¶13}** On appeal, Ritter only argues that the State failed to establish that he had possession of the methamphetamine that was located directly under his seat in

the Chrysler. For this reason, we will limit our analyses to the possession element of the conviction he challenges.

**{¶14}** As to the sufficiency of the evidence, the evidence produced by the State at trial does more than establish that the methamphetamine was found in mere proximity to Ritter. Officer Hackworth testified that he observed Ritter making furtive movements in the direction of where the methamphetamine was located. *McClain*, *supra*, at ¶ 46. He stated that, at the time of the traffic stop, he observed both Ritter and the passenger "lean forward and reach down towards the floorboard of their respective sides of the vehicle." (Tr. 269). He also clarified that he did not see the passenger of the vehicle lean towards the driver's side of the vehicle.

**{¶15}** Further, Officer Hackworth also testified that, at the beginning of the traffic stop, Ritter exhibited multiple "nervous indicators," such as breathing heavily, refusing to make eye contact, tapping his fingers, and biting his fingernails. (Tr. 275). The evidence also indicates that the drugs were readily accessible to Ritter. Detective Brunswick testified that he located the black case that contained the methamphetamine "directly underneath the driver seat" in the area between where a person's legs would be situated. (Tr. 243). *Silvas*, *supra*, at ¶ 14. The State also presented testimony establishing that Ritter owned the Chrysler and that the black case was not completely concealed under the seat but was partially visible.

**{¶16}** From this testimony, a trier of fact could reasonably conclude that Ritter was in constructive possession of the methamphetamine that was located

directly under the driver's seat of his Chrysler. Thus, having examined the evidence in the record in a light most favorable to the prosecution, we conclude that Ritter's conviction is supported by sufficient evidence.

{¶17} As to the manifest weight of the evidence, the Defense asked questions at trial about whether the black case was examined for fingerprints or DNA samples. However, Officer Hackworth explained that they do not generally collect these types of evidence for this kind of offense. Further, the Defense also asked questions about what was visible to Officer Hackworth at the time that the traffic stop was being initiated. He indicated that he could see Ritter's head and shoulders but could not see his arms as he observed the occupants of the vehicle making furtive movements towards the floorboard.

{¶18} Officer Hackworth also testified that Ritter denied ownership of the contents of the black case. Ritter told the police that several other people had been driving the Chrysler and that one of these individuals may have left the black case under the driver's seat. In response, Officer Hackworth had noted to Ritter "that it would not seem very smart, for someone to spend their money to purchase drugs, to leave them behind." (Tr. 296).

{¶19} On cross-examination, Officer Hackworth indicated that a search of Ritter's person was conducted when he exited the vehicle and that no drug paraphernalia was located on him. He also testified that the passenger's house was subsequently raided by the police two months after this traffic stop and that two

pounds of methamphetamine were located in his residence. Further, the evidence at trial indicates that the syringes that were located in the passenger's book bag were found to contain traces of methamphetamine.

{¶20} In examining the evidence presented at trial on the basis of its weight and credibility, we have found no indication that the finder of fact clearly lost its way and returned a verdict that was against the manifest weight of the evidence. The evidence in the record does not weigh heavily against the conclusion that Ritter was in constructive possession of the controlled substances that were located directly under his seat. Accordingly, the sole assignment of error is overruled.

*Conclusion*

{¶21} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Hancock County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**