[Cite as *State v. Miller*, 2026-Ohio-2141.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

RONALD MILLER,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-38

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2025 0034

Judgment Affirmed

Date of Decision: June 8, 2026

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Ronald L. Miller ("Miller"), brings this appeal from the June 12, 2025, judgment of the Allen County Common Pleas Court sentencing him to prison after he was convicted in a jury trial of Aggravated Possession of Drugs, a second degree felony. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On February 1, 2025, at approximately 12:45 a.m., Miller was a passenger in a vehicle that was stopped for a turn-signal violation. During the traffic stop, an open-air drug sniff of the vehicle was conducted and the canine alerted to the odor of narcotics. The vehicle was searched and a plastic bag containing methamphetamines was located on the passenger-seat floorboard inside a "beanie" hat that Miller had been wearing at the beginning of the traffic stop. Miller was later interviewed and he acknowledged that the drugs were his and that there was about an ounce of methamphetamines. Testing indicated that the plastic bag found in the vehicle contained 28.06 grams of methamphetamines, +/- .05 grams.

{¶3} On March 13, 2025, Miller was indicted for Aggravated Possession of Drugs, specifically methamphetamines, in violation of R.C. 2925.11(A)/(C)(1)(c), a second degree felony because the amount equaled or exceeded five times the bulk

amount but was less than fifty times the bulk amount. Miller pled not guilty to the charge.

{¶4} Miller proceeded to a jury trial on May 5-6, 2025, wherein he was found guilty of the offense as charged. Miller was then sentenced to serve an indefinite mandatory prison term of six years to a maximum of nine years. A final judgment entry memorializing Miller's sentence was filed June 12, 2025. Miller now appeals the trial court's judgment, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court erred in not admitting Hoskins's jail recorded statements against interest under Evidence Rule 804(3) and violated Miller's due process right to a fair trial.**

**Second Assignment of Error**

**Appellant's conviction and sentence was against the manifest weight of the evidence.**

**Third Assignment of Error**

**Appellant's conviction and sentence was not supported by sufficient evidence.**

{¶5} For ease of discussion, we elect to address the assignments of error out of the order in which they were raised.

*Third Assignment of Error*

{¶6} In his third assignment of error, Miller argues that there was insufficient evidence presented to convict him of Aggravated Possession of Drugs.

Standard of Review

{¶7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both functions are reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.); *State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

Relevant Authority

**{¶8}** Miller was convicted of Aggravated Possession of Drugs, specifically methamphetamines, in violation of R.C. 2925.11(A)/(C)(1)(c), which reads as follows:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> . . .
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:
>
> . . .
>
> (c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term.

**{¶9}** Miller contends that the State did not present sufficient evidence that he possessed the methamphetamine. Revised Code 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶10} It is well-settled that possession of drugs can be "actual" or "constructive. *E.g. State v. Ritter*, 2024-Ohio-1336, ¶ 12 (3d Dist.). Generally, a person has actual possession of an item if it is within his or her immediate physical possession/control. *Id.* citing *State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). Constructive possession exists if a person "'is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it.'" *Id.* quoting *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). Importantly, constructive possession requires that "the person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

{¶11} A defendant's proximity to drugs alone is insufficient to establish constructive possession of the drugs; however, proximity may constitute some evidence of constructive possession. *Ritter* at ¶ 12, citing *State v. Brown*, 2009-Ohio-4390, ¶ 20. Thus, presence in the vicinity of the contraband, combined with another factor probative of dominion or control is sufficient to establish constructive possession. *Id.*

Evidence Presented by the State

{¶12} On February 1, 2025, around 12:45 a.m., Patrolman Rayoum of the Lima Police Department observed a vehicle that did not activate its turn signal 100 feet prior to turning as required by statute. Patrolman Rayoum initiated a traffic stop of the vehicle for the infraction and he approached the driver's-side of the vehicle.

{¶13} The vehicle was being driven by a man named Roger Hoskins. Miller was in the front passenger seat, wearing a black "beanie hat" and talking on a cell phone. Patrolman Rayoum noticed that the driver was shaking and appeared to be extremely nervous. Patrolman Rayoum asked for the IDs of both of the vehicle's occupants, then went back to his patrol car to check their information. While in his patrol car, Patrolman Rayoum requested the assistance of a canine unit to conduct an open-air sniff of the vehicle.

{¶14} Patrolman Wireman of the Lima Police Department responded to the scene within minutes. Another officer from the Lima Police Department also responded to the scene to provide assistance. After speaking briefly with Patrolman Rayoum, Patrolman Wireman approached the stopped vehicle and informed Hoskins and Miller of the open-air sniff that was about to occur. Hoskins became argumentative and Miller expressed his concern that he had consumed marijuana, but Patrolman Wireman indicated that the canine was not trained to detect marijuana. The open-air sniff was then conducted and the canine alerted to the odor of narcotics.

{¶15} After the canine alerted to the presence of narcotics, Patrolman Rayoum approached the vehicle and asked Hoskins, the driver, to exit the vehicle. The driver was searched by Patrolman Rayoum. Notably, while the driver was being searched, the other officer that was present at the scene who had been standing by the passenger's side of the vehicle came around to the driver's side. Around that

time, Patrolman Rayoum observed Miller dragging his foot as if he was pushing something back with it. On Patrolman Rayoum's body camera, it can be observed that Miller was no longer wearing his "beanie hat." Patrolman Rayoum told Miller to stop reaching.

{¶16} Once Patrolman Rayoum finished searching the driver, he had Miller step out of the vehicle. When Miller was getting out of the vehicle, the assisting officer observed that it looked like something had fallen from between his legs. Miller was searched and then the officers began their search of the vehicle.

{¶17} Almost immediately the assisting officer located the "beanie hat" that Miller had been wearing at the beginning of the stop on the passenger floorboard of the vehicle. Inside the "beanie hat" was a plastic bag containing a substance that was later tested and found to contain 28.06 grams, +/- .05 grams, of methamphetamines.

{¶18} On February 3, 2025, Miller was interviewed by a detective with the Lima Police Department. During the interview Miller stated that the "ice," slang for methamphetamines, was his, and that there was about an "ounce." Miller stated he was supposed to deliver the methamphetamines to a woman in Lima at an address that was approximately three to four blocks from the area of the traffic stop.

Analysis

**{¶19}** Miller does not dispute that methamphetamines were found in the vehicle on the passenger floorboard. However, he argues that the State did not sufficiently establish that he knowingly possessed the methamphetamines, particularly since the drugs were found in Hoskins's vehicle and Hoskins was driving.

**{¶20}** Under a sufficiency of the evidence review, we are directed to look at the facts in the light most favorable to the prosecution. Here, methamphetamines were found during a traffic stop on the floorboard below where Miller was sitting, inside a hat Miller was wearing at the beginning of the traffic stop. Miller also admitted to a detective that the drugs were his. In fact, Miller told the detective that there was approximately an ounce of methamphetamines, and the amount of methamphetamines recovered was within .3 grams of an ounce.

**{¶21}** The methamphetamines were thus located directly beneath Miller, in Miller's hat, and Miller admitted the drugs were his in an interview. When analyzing these facts in the light most favorable to the State as we are directed, we do not find that there was insufficient evidence presented to convict Miller of Aggravated Possession of Drugs. Therefore, Miller's third assignment of error is overruled.

*Second Assignment of Error*

**{¶22}** In his second assignment of error, Miller argues that even if there was sufficient evidence presented to convict him of Aggravated Possession of Drugs, his conviction was against the manifest weight of the evidence.

Standard of Review

**{¶23}** In determining whether a conviction is against the manifest weight of the evidence, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

Evidence Presented by Defense

**{¶24}** Miller testified on his own behalf at trial. He acknowledged that he had an extensive criminal history with multiple drug-related convictions and that he had served time in prison. He also acknowledged that the methamphetamines were found in the vehicle.

{¶25} However, Miller testified that he was unaware of the methamphetamines in the vehicle until one moment during the traffic stop where the driver, Hoskins, suddenly threw the plastic baggie of drugs in his lap. Miller indicated his story was corroborated by the fact that at one point the driver was admonished by an officer for taking his hands off of the steering wheel.

{¶26} Miller testified that he did not want to "snitch" on Hoskins initially. Miller testified that he never physically touched the plastic bag; rather, he testified he grabbed it with his hat then put the drugs inside. He testified that he knew he was tampering with evidence but he covered the drugs anyways. Miller also testified that he knew that the bag contained about an ounce of methamphetamines because he was very familiar with drugs and amounts and he could tell immediately.

{¶27} As to his confession, Miller stated that he only claimed the drugs were his because he was going through addiction withdrawal and he was hoping to get drug treatment at the time. He also stated that he was only in Lima on the date in question because he was going to the hospital for a problem with his hand.[1] He claimed that the woman he initially said he was delivering drugs to during his police interview was actually going to take him to the hospital, not receive drugs, even though Miller had never met the woman in-person. Miller did not know if the woman was white or black as he had just met her online.

---

[1] Hoskins did have an injury to his hand.

Analysis

**{¶28}** Miller argues that the evidence established that he lacked the knowledge of the drugs being in the vehicle until the moment they fell into his lap. However, Miller told multiple stories regarding the drugs, and it is well-settled that a conviction is not against the weight of the evidence because the jury elected to believe the State's version of events. *State v. Green*, 2023-Oho-4360, ¶ 136 (3d Dist.).

**{¶29}** Moreover, in Miller's earlier statement in his interview he was clear in that the drugs were his, there was about an ounce, which was accurate, and that he was delivering the drugs to a woman. The drugs were found underneath Miller, inside the very hat that Miller had been wearing at the beginning of the traffic stop. Miller was actually observed making movements in the passenger seat, and an officer thought she observed something fall when Miller got out of the car. We have previously held that "furtive moments" in an automobile may provide sufficient indicia of dominion or control over contraband, permitting an inference of constructive possession. *State v. McClain*, 2020-Ohio-1436, ¶ 46 (3d Dist.).

**{¶30}** Given all the evidence in the record, we do not find that this is one of the exceptional cases where the evidence weighs heavily against the conviction. Therefore, Miller's second assignment of error is overruled.

*First Assignment of Error*

**{¶31}** In his first assignment of error, Miller argues the trial court erred by denying Miller's request to enter into evidence a recording of a jail-house call between Miller and the driver of the vehicle where the drugs were found. The trial court determined that the call was not admissible under Evid.R. 804(B)(3) because, *inter alia*, Miller did not establish that the driver of the vehicle was unavailable as a witness, which is a requirement for admissibility under Evid.R. 804(B)(3).

## Standard of Review

**{¶32}** "A decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the discretion of the trial court." *State v. Sumlin*, 69 Ohio St.3d 105, 108-09 (1994). Therefore the trial court's determination to admit or exclude evidence under Evid.R. 804(B)(3) "will not be disturbed absent an abuse of discretion." *State v. Thiel*, 2017-Ohio-242, ¶ 121 (3d Dist.).

## Relevant Authority

**{¶33}** Generally, "[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute . . . not in conflict with a rule of the Supreme Court of Ohio, by [the Ohio Rules of Evidence], or by other rules prescribed by the Supreme Court of Ohio." Evid. R. 802.

**{¶34}** Evidence Rule 804(B) provides exceptions to the general rule excluding hearsay. As relevant to this case, Evid.R. 804(B)(3) reads as follows:

(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement.

**{¶35}** In other words, for a hearsay statement to be admissible under Evid.R. 804(B)(3), three requirements must be met: "(1) the declarant [must be] unavailable as a witness, (2) the statement[ must be] against the declarant's interests and tend[] to subject him to criminal or civil liability, and (3) corroborating circumstances indicate the trustworthiness of the statement[.]" *State v. Thiel*, 2017-Ohio-242, ¶ 121 (3d Dist.).

**{¶36}** Evidence Rule 804(A) specifically defines "unavailability as a witness as follows:

(A) Definition of unavailability. "Unavailability as a witness" includes any of the following situations in which the declarant:

-14-

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;

(3) testifies to a lack of memory of the subject matter of the declarant's statement;

(4) is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity;

(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means.

A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

Analysis

**{¶37}** Miller testified on his own behalf at trial. During his testimony, he was asked if he had a chance to speak with the driver of the vehicle that was stopped on February 1, 2025, since Miller had been in jail. Miller responded that he had spoken to the driver. When Miller was asked what the driver told him, an objection was made by the prosecution and a sidebar was held outside the hearing of the jury. Later, the trial court discussed the matter on the record in the following excerpt.

THE COURT: . . . On April 29th [] there had been reportedly a phone call between Mr. Hoskins [the driver of the vehicle during the February 1, 2025 traffic stop] and Mr. Miller through the Allen County jail . . .

. . .

The Court had some background on it is what I'm, what I'm getting at, that there had been this phone call. Um, the question [defense counsel] had asked though was what Mr. Hoskins said to him and you had two (2) reasons. The State objected to hearsay, but [defense counsel], you had two (2) reasons, one of them being a statement against interest.

[DEFENSE COUNSEL]: Correct.

THE COURT: And you had asked me to provide my reasons for that, and I said I will at the break because I didn't want the jury to overhear anything. Um, so, my understanding is that [rule] applies only to a declarant who is unavailable.

[DEFENSE COUNSEL]: Correct.

THE COURT: 804 specifically defines unavailability. Um, and in looking at those things, I found no evidence, nothing's been presented to me about why that person is unavailable. Uh, certainly he would have been known as the individual in the car with Mr. Miller, would've been known to Mr. Miller. Obviously, that conversation that happened on the 29th, just happened, but nevertheless, um, his name was certainly available, and so in looking at the definition of unavailability, um, I don't find that he was unavailable. I mean, is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter; that didn't happen. Persist and refuses, in refusing to testify concerning the subject matter despite an order of the court to do so; that didn't happen. Testifies to a lack of memory of the subject matter; he didn't testify, so that didn't happen. Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; I don't have any evidence of that. And the fifth one is, is absent from the hearing in the proponent of a declarant statement has been unable to procure his

attendance by process or other reasonable means; I didn't see anything like that in here.

. . .

THE COURT: Okay. What was played to me, and please correct me if I'm wrong, it wasn't a whole phone call, like I know it wasn't a whole phone call, it was, um, a brief playing where [the driver] said basically, tell em it was mine. Okay? I didn't hear where he said, well it's mine. I didn't hear that. So I don't think even if he wasn't available that it was a statement against interest as this is defined. Um, but again, there's been no showing of unavailability.

And then there was a second reason[.] . . .

[DEFENSE COUNSEL]: . . . It was the position of the defense if the court were to determine it's [sic] ruling based on not being unavailable was that the uh, um, witness had been subpoenaed although not by the proponent being the defendant, um, and was unable to be served because apparently, he is no longer at the address or whatever.

THE COURT: That's what the return said. No longer lives there.

[DEFENSE COUNSEL]: And then the defense, specifically the defendant, had spoken to him and he indicated that he was not coming and if they found him, he was going to use his Fifth Amendment privilege. So that was, basically the position of defense was he is not available.

. . .

[THE COURT: Just so we're clear, that was not said up here.

[DEFENSE COUNSEL]: . . . I guess the more pressing matter is the reason that fit, even if the court determines that we don't meet the definition of unavailability, is that Mr. Miller, because of what he tried to testify about, his concerns and fear about snitching against someone like Mr. Hoskins, the effect of the call and the words that the court remembers very close is, just tell them that you said it was yours because you didn't want me to get arrested or something like that, paraphrasing. Basically saying, giving him permission to say yea, just

tell em that the only reason you claimed it was because you didn't want me to get in the [sic] trouble. And the effect of that statement was to allow Mr. Miller to feel safe. More safe and more comfortable to say, now I can tell the truth because I don't have to be afraid of Mr. Hoskins. So the exception was, it's not for the truth of the matter asserted, it was to show the effect on Mr. Miller as to why he goes from one story to another and the effect being, I'm not afraid anymore.

. . .

THE COURT: Yea, if you want to proffer [the call] as Defendant's Exhibit 'A', we'll submit it into the record for appellate purposes . . . Um, I understand what you're saying as far as the effect on the listener, but again, the specific statements, I think it was the truth of the matter asserted in that statement.

(Tr. at 389-95).

{¶38} The trial court thus excluded Miller's jailhouse call with Hoskins from evidence. Miller now renews his arguments on appeal, contending first that the trial court erred by determining that Mr. Hoskins was not "unavailable" for purposes of Evid.R. 804(B)(3).

{¶39} Specifically, Miller argues that Hoskins should have qualified as an "unavailable" witness under Evid.R. 804(A)(5). He claims that the record established that Hoskins had been subpoenaed by the State but Hoskins did not appear at trial. Importantly, Evid.R. 804(A)(5) indicates that a witness is unavailable if he is absent from the hearing "and the *proponent* of the declarant's statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." (Emphasis added.). Miller was the proponent of the statement and he did not subpoena Hoskins or present any sworn testimony that he otherwise attempted

to secure Hoskins's attendance. *See State v. Bias*, 2022-Ohio-4643, ¶ 88 (10th Dist.) (holding that relying on the issuance of the subpoena alone is insufficient to establish unavailability by the proponent of the statement pursuant to Evid.R. 804(A) without some sworn testimony on efforts to locate the witness); *State v. Keairns*, 9 Ohio St.3d 228, 232 (1984) (stating, regarding Evid.R. 804, "[t]he issuance of a subpoena alone does not constitute a sufficient effort when other reasonable methods are also available."). There is nothing in the record establishing that Miller was unable to procure Hoskins's attendance or that Miller even made any efforts to secure Hoskins's attendance. In fact, the State's subpoena of Hoskins was returned indicating Hoskins no longer lived at the address that had previously been given. Miller himself was therefore in a much better position to find out where Hoskins was residing since he was in contact with Hoskins, yet he did not seek to procure Hoskins' attendance at trial. On the record before us, we do not find that the trial court abused its discretion on this issue.

{¶40} Miller next argues that a witness who invokes his privilege against self-incrimination is considered to be unavailable for purposes of Evid.R. 804. Miller contends that Hoskins expressed on the phone call that he would invoke his Fifth Amendment right *if* he was brought into court. While it is true that the assertion, in court, of a Fifth Amendment privilege against self-incrimination can constitute unavailability, *see State v. Landrum*, 53 Ohio St.3d 107, 113-14 (1990), there was no such assertion in court here.

**{¶41}** Generally, "to exclude a witness [invoking Fifth Amendment Rights] the trial court must conduct a sufficient inquiry to determine the witness will not offer any testimony but only intends to invoke the Fifth Amendment privilege[.]" *State v. Wade*, 2023-Ohio-3490, ¶ 58 (10th Dist.). No such inquiry was made here because Hoskins was never in court. There was also no stipulation to Hoskins's unavailability. Thus we find no abuse of discretion with the trial court's determination that Miller did not establish that Hoskins was unavailable as a witness.

**{¶42}** Next, Miller argues that even if we determined that the trial court did not abuse its discretion regarding an "unavailability" finding, the trial court should have admitted Hoskins's statement as non-hearsay because it was not "for the truth of the matter asserted." This argument is also not well-taken, because Miller is plainly attempting to introduce evidence that the methamphetamines were Hoskins's, not Miller's. Possession of the methamphetamines was the focal point of the entire trial, thus the statement would clearly be for the truth of the matter asserted.[2]

---

[2] We emphasize that on the call between Miller and Hoskins, which was proffered for our review, Hoskins never specifically claimed the drugs were his; rather, Hoskins told Miller to tell the jury that Miller said the drugs were his initially because Miller did not want to get Hoskins arrested. Hoskins never explicitly stated that the drugs were his.

**{¶43}** For all of these reasons we do not find that the trial court abused its discretion by excluding the jailhouse call between Miller and Hoskins. Therefore, Miller's first assignment of error is overruled.

*Conclusion*

**{¶44}** Having found no error prejudicial to Miller in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

 

_____
Juergen A. Waldick, Judge

 

_____
William R. Zimmerman, Judge

 

_____
Mark C. Miller, Judge

DATED:
/jlm